**JEFFERSON STANDARD BROAD-
CASTING COMPANY, a corpora-
tion, Plaintiff,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION; Rosel H. Hyde, Chairman;
Robert T. Bartley, Robert E. Lee, Ken-
neth A. Cox, James J. Wadsworth,
Nicholas Johnson and H. Rex Lee, In-
dividually and as Members of the Fed-
eral Communications Commission, De-
fendants.**

**Civ. A. No. 2413.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Sept. 22, 1969.

See also, D. C., 297 F.Supp. 784.

Thomas Ashe Lockhart, Cansler & Lockhart, Charlotte, N. C., Welch O. Jordan, Jordan, Wright, Nichols, Caffrey & Hill, William L. Stocks, Greensboro, N. C.; R. Russell Eagan and Kirkland, Ellis, Hodson, Chaffetz & Masters, Washington, D. C., for plaintiff.

Joseph R. Cruciani, Asst. U. S. Atty., Charlotte, N. C., Bernard C. O'Neill, Jr., and Katrina Renauf, Federal Communications Commission, Washington, D. C., for defendants.

McMILLAN, District Judge.

PRELIMINARY STATEMENT

The plaintiff seeks an order requiring the Federal Communications Commission to issue a certificate under 26 U.S.C. § 1071(a), the effect of which will entitle the plaintiff to deferment of taxation of the gain realized from the sale of television station WBTW, Channel 13, in Florence, South Carolina. On motion for summary judgment the court finds that there is no conflict in the evidence as to any fact necessary to support this judgment, and that the plaintiff is entitled to the relief requested. The relief sought is granted, and the defendants are directed to issue the certificate.

FINDINGS OF FACT

The plaintiff, Jefferson Standard Broadcasting Company, has since 1949 owned and operated television broadcasting station WBTV, Channel 3, in Charlotte, North Carolina. From October 18, 1954 until April 1, 1968, the plaintiff owned and operated television station WBTW, Channel 13, in Florence, South Carolina. Both operations were under licenses from the Federal Communications Commission. The two stations in 1954 had an overlap of their "Grade B" or weak signals, and since 1958 this overlap has covered about 1,200 square miles and served about 50,000 people.

In 1964 the Commission adopted a regulation, Rule 73.636, prohibiting the improvement of television broadcasting facilities under common ownership which would result in an increase in the overlap of their Grade B signals. This rule "froze" the reach of the signals of both stations and prevented improvement of their signals. The existing overlap was allowed to continue under a "grandfather clause."

The FCC has a long-standing policy that licensed stations should "maximize" their program and services.

The FCC has no policy against overlap of signal areas. It has a policy to *allow* expansion of overlapping signal areas. For example, in the period since 1954, some eleven stations have been authorized by the FCC to project a signal which overlaps WBTV territory, and five stations have been allowed to *increase* existing overlap of WBTV territory. With respect to station WBTW in Florence, the number of stations with signals which overlap the Florence signal

increased by twelve between 1954 and 1967, while stations in Columbia, South Carolina; Wilmington, North Carolina; Charleston, South Carolina; High Point, North Carolina; Charlotte and Raleigh and other places were authorized by the FCC to invade or further to overlap existing invasion of WBTW territory. The only practical way to improve the signal of WBTV or WBTW was to raise the height of the tower.

The increased service offered, with FCC approval, by other broadcasters noticeably and substantially restricted the area in which WBTV and WBTW could offer competitive service, and sharply reduced the number of potential listeners.

The economic effects on WBTW (Florence) are illustrated by the earnings of the station which for 1963 were $214,250; for 1964 were $206,876; for 1965 were $292,872; for 1966 were $257,456; for 1967 were $111,053; and for 1968 were $91,500.

WBTV has shown some increase in its earnings in recent years (if inflation is disregarded), but the evidence dramatically shows that its competitive position in a rapidly growing market area has become weaker and weaker, and the number of homes reached by its signals when measured against the potential has been markedly reduced *because* it has not been possible to increase the height of its antenna and thereby increase the quality and outreach of its signal.

The competitive situation was such that the earnings of the Florence station were being substantially reduced and the potential expansion of both stations was sharply curtailed by the new 1964 Commission rule. Both stations in terms of service to potential customers were lagging behind competitors.

The owners of Jefferson concluded that they could not continue to operate both stations under common ownership and still raise their antennas and make the other necessary improvements to reach the available market without running afoul of the new 1964 policy of the Commission. They therefore sold the Florence station to the Daily Telegraph Printing Company of Bluefield, West Virginia, and invested the proceeds (plus some extra cash) in the purchase of television station WRVA–TV in Richmond, Virginia.

The plaintiff sought and procured approval by the Commission of the sale of WBTW, after giving notice of intention to claim the tax benefit of a certificate under § 1071(a). Thereafter, the plaintiff sought a certificate from the Commission that its sale of the Florence station was "necessary or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission with respect to the ownership and control of radio broadcasting stations, * * *." within 26 U.S.C. § 1071(a). The Commission, by a vote of three to two (with one commissioner absent and one commission seat vacant and over an eloquent dissent by two of the five voting members), denied the certificate. The plaintiff then brought this suit seeking a result contrary to the Commission's action.

The evidence is uncontradicted that:

1. The Commission's policy against expanding the Grade B signal area of *commonly owned* stations is a *new* policy adopted in 1964.

2. This new policy prevents WBTV and WBTW from competing effectively in their natural listener area with other broadcasters.

3. The practical effect of continued common ownership would be that WBTW in Florence would wither on the vine and that WBTV in Charlotte would be seriously handicapped because of inability to improve its signal and its signal area.

4. The Commission's basic policy is to promote competition and to encourage rather than suppress improvement of service and quality of signal.

5. The Commission's new policy made it impossible for the plaintiff to improve signal quality or signal area as long as it owned both stations.

6. The sale of WBTW was necessary and appropriate because of the new "no improvement" rule of the Commission as to commonly owned stations with a signal overlap.

No reasonable conclusion is possible except that the sale of the Florence station was "necessary or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission with respect to the ownership and control of radio broadcasting stations, * * *."

## CONCLUSIONS OF LAW

Section 1071(a) of the Internal Revenue Code (26 U.S.C.A. § 1071(a)) since 1958 has provided in pertinent part that:

"If the sale or exchange of property (including stock in a corporation) *is certified by the Federal Communications Commission to be necessary or appropriate to effectuate a change in a policy of, or the adoption of a new policy by, the Commission* with respect to the ownership and control of radio broadcasting stations, such sale or exchange shall, if the taxpayer so elects, *be treated as an involuntary conversion* of such property within the meaning of section 1033." (Emphasis added.)

(Section 1033 of the Internal Revenue Code allows the taxpayer, if he so elects, to postpone taxation on capital gain realized upon the involuntary conversion of assets into money.)

The "change in" FCC policy or the "new policy" of the Commission is FCC Rule 73.636(a) (47 CFR 73.636), adopted in 1964, which reads as follows:

"(a) No license for a television broadcast station shall be granted to any party (including all parties under common control) if:

"(1) Such party directly or indirectly owns, operates, or controls one or more television broadcast stations *and the grant of such license will result in overlap of the Grade B contours of the existing and proposed stations*, computed in accordance with § 73.684; or" (Emphasis added.)

Rule 73.636(a) (1) is interpreted by the Commission to prohibit not merely the original issuance of a license but also any *improvement* of television facilities under common ownership which would increase existing Grade B overlap. The public notice of the Commission regarding the sale of WBTW (page 36 of the Jefferson Standard exhibit to the complaint) makes this clear.

■ The sale of the Florence station, regardless of whether WBTV or WBTW is making or losing money, is "appropriate to effectuate" the Commission's new 1964 "no improvement of jointly owned stations" directive and policy. It was made abundantly clear in the oral argument as it is obvious from the facts that the Commission in spite of its 1964 directive:

(a) Is still interested in improvement of service;

(b) Is still interested in competition;

(c) Has no policy against overlap of signals of stations with different broadcast frequencies;

(d) Has no policy against high broadcasting towers or raising of broadcasting towers;

(e) *Does* have a policy, *new* as of 1964, against overlap of Grade B signals of stations under *common control.*

The new policy or change in policy in the 1964 rule is the policy against overlap of Grade B signals *under common ownership or control.*

If the common control is eliminated, expansion of signal and raising of towers are allowed.

Quite obviously, the sale to eliminate common control is "appropriate to effectuate" this change in Commission policy or this new policy just adopted by the Commission with respect to the ownership and control of stations.

Several contentions were advanced on behalf of the government to avoid these

simple and obvious conclusions. These arguments included the following:

1. That § 1071, first enacted in 1944, only relieves those taxpayers who were originally in 1943 ordered to *reduce their holdings* so that they were left owning not more than five VHF stations. In other words, it is contended that § 1071 dealt only with a group of transactions (accumulation of broadcasting stations) which had all been *completed* in 1943. The fallacy of this contention is obvious. The present language of § 1071 in pertinent part was put in the statute in *1958* There would be no need in 1958 for Congress to pass a law regarding the taxability of completed 1943 transactions.

2. It was contended that the statute only applies to sales which had been *ordered by the Commission*. This argument is appealing but fallacious. *The Commission has no power to order the sale of a particular property.* The Commission admits that the Commission has never issued such an order nor requested a court to issue such an order for the sale of a particular station. The pressures for sale envisaged by the statute and cited in argument are all indirect pressures. Furthermore, the legislative history shows that Congress did not intend that a sale be strictly "involuntary" to qualify for the tax postponement. The bill as originally proposed in 1943 contemplated exemption only of

"the sale or exchange of property *required by the Federal Communications Commission* by order or as a condition to the granting of any application * * *." (Emphasis added.)

That language restricting the tax benefit to involuntary sales was struck out of the bill on its way through Congress and has never reappeared. It is perfectly clear that covering these transactions into the deferred tax procedures of 26 U.S.C. § 1033, was simply for convenience of processing, and that it was not intended by Congress that sales under § 1071 must be "involuntary." Therefore, it appears that the Commission itself proceeded upon an erroneous view of the law when it stated on page 4 of its opinion that:

" * * * Jefferson's sale of WBTW was *not involuntary. Thus* it is not entitled to the requested relief." (Emphasis added.)

3. The Commission proceeded upon another error of law when it failed to find facts based upon the evidence before it. The concluding sentence in the opinion of the Commission (numbered paragraph 11) says:

"Since the instant case concerns a sale which was not prompted by Commission action and, *therefore, the reason for the sale is not within its certain knowledge* it cannot make the requested certification here." (Emphasis added.)

By this language the Commission confesses a second erroneous view of law: that it has no duty to find facts about things *its members don't already know personally* and that the Commission's certificate is to be based upon a subjective rather than an objective standard.

Facts found by an administrative agency under a misapprehension of the pertinent law and the duty of the administrative agency should not be allowed to stand.

The question remains as to the proper procedure for dealing with the situation. The Administrative Procedure Act, §§ 702, 703 and 706, appears to point the way.[1]

---

1. Title 5 U.S.C.A.
   § 702. Right of review.
   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
   § 703. Form and venue of proceeding.
   The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law,

■ It is clear that the plaintiff is "aggrieved" by the agency action and is entitled to judicial review. This court by order filed March 6, 1969, has held that plaintiff has brought this suit in a court of proper jurisdiction. The evidence that sale of the Florence television station was caused by the economic consequences of the Commission's "no improvement" policy is uncontradicted and overwhelming. There could be no finding of fact supportable on this record to the contrary, and there could be no finding of fact that the sale of WBTW was *not* "appropriate" to *effectuate* the Commission's "no improvement" policy of 1964. Entitlement to the tax deferment certificate contemplated in § 1071 is not dependent on whether the sale was "involuntary" or was directly ordered by a court or by the Commission. It therefore appears that the issuance of the certificate by the Commission is "unlawfully withheld" under § 706(1); that the Commission's conclusion that the certificate should not be issued is "arbitrary, capricious, an abuse of discretion" under § 706(2) (A); is "short of statutory right" under § 706(2) (C); is "unsupported by substantial evidence" under § 706(2) (E); and is "unwarranted by the facts" under § 706(2) (F).

### ORDER

The order of the Federal Communications Commission denying the certificate is set aside; the proceedings is remanded to the Federal Communications Commission with instructions to issue immediately a certificate that the sale of WBTW is appropriate to effectuate the new 1964 policy of the Federal Communications Commission referred to in 1964 Rule 73.636.

This the 22 day of September, 1969.

agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

§ 706. Scope of review.

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.